UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 13-cr-67 (BAH) |
| GARFIELD TAYLOR, | Chief Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION**

The defendant, Garfield Taylor, was sentenced to 156 months' incarceration on his guilty plea, pursuant to a plea agreement, to one count of securities fraud stemming from his operation of a Ponzi scheme that defrauded over 150 victims of over $25 million. *See* Judgment in a Criminal Case, ECF No. 72.[1] Almost one year after his sentencing, the defendant filed *pro se* motions seeking to obtain discovery, Def.'s Expedited Mot. for Leave to Modify Protective Order Governing Disc. ("Def.'s Disc. Mot."), ECF No. 76, and to vacate his guilty plea and sentence, pursuant to 28 U.S.C. § 2255, on the ground that he received ineffective assistance of counsel in multiple respects, Def.'s Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and to Permit Discovery ("Def.'s 2255 Mot."), ECF No. 79.[2] For the reasons below, the defendant's motions are denied.

**I. BACKGROUND**

Set out below are the facts underlying the defendant's conviction, as summarized in the Statement of Offense accompanying the Plea Agreement, which facts were admitted by the

---

[1] This case was reassigned to the undersigned Chief Judge on May 4, 2016, following the retirement of the original sentencing Judge.
[2] The defendant has moved to amend a typographical error in his § 2255 petition, Def.'s Mot. Amend § 2255 Mot., ECF No. 94, and filed a "Writ or Order to Show Cause," Def.'s Writ or Order to Show Cause, ECF No. 98, which the Court construes as seeking to amend the defendant's § 2255 motion to include the document itself as a proposed order. These two motions to amend are granted.

1

defendant at the time of his guilty plea, *see* Stmt. of Offense, ECF No. 27; Plea Agreement, ECF No. 28; Plea Hr'g Tr. dated March 6, 2014 ("Plea Hr'g Tr.") at 21–25, ECF No. 85, followed by a summary of the hearings held regarding the defendant's guilty plea, sentencing and post-sentencing confirmation of his intention to maintain his guilty plea.

### A. THE DEFENDANT'S CRIMINAL CONDUCT

From roughly 2006 to 2010, the defendant ran a Ponzi scheme through which he defrauded over 150 people of millions of dollars. Stmt. of Offense ¶¶ 1, 4, 46. While promising that his investment strategy was a "safe and lucrative" way to "provide his customers above-market returns through a covered-call trading strategy," the defendant knowingly failed to disclose that he was "engaging in trading strategies that involved a high degree of risk" and "using other investors' principal—not trading profits—to pay for the large returns he had promised to earlier investors." *Id.* ¶¶ 4, 5. The defendant's "highly risky trading strategies" resulted in "overwhelming losses," yet he knowingly continued to pursue victims through his misrepresentations. *Id.* ¶ 7. The defendant used two companies to facilitate this criminal activity, Garfield Taylor Incorporated ("GTI") and Gibraltar Asset Management Group, LLC ("GAM"). *Id.* ¶¶ 2–3. GTI was "the original entity that defendant used to lure investors," *id.* ¶ 8, and through GTI, the defendant lost approximately $16,450,415 of principal invested through a series of high risk trades, *id.* ¶12. GAM, which was founded in late 2007 or early 2008, likewise was used by the defendant to make risky trades with investor capital and lost approximately $8,683,577 of principal invested, including a single investment of six million dollars from a children's charity. *Id.* ¶¶ 14, 21, 25. Despite incurring massive losses to his investors, the defendant withdrew at least $2,500,000 over the course of his criminal activity for his own personal use. *Id.* at ¶ 45.

## B. HEARINGS ON THE DEFENDANT'S PLEA AND SENTENCING

The defendant was represented by court-appointed counsel from the time of his arraignment through his plea of guilty. *See* Minute Entry, dated Feb. 28, 2013. During this period, the parties entered into a protective order providing that documents created by the United States "in preparation for, or in connection with" the defendant's case would be disclosed to the defense, but required that any "sensitive materials" containing identifying personal and financial information of his victims must "be maintained in the custody and control of defense counsel," who could show the materials to the defendant "as necessary to assist in preparation of the defense" without "provid[ing] a copy" to the defendant or permitting the defendant to "write down any personal identity information" in the documents. Consent Order Governing Disc. ¶¶ 1, 7, 9, ECF No. 8.

Almost one year after the defendant's arraignment, the defendant entered a guilty plea to one count of securities fraud, in violation of 15 U.S.C. §§ 78j, 78ff, pursuant to an agreement reached with the government. Plea Agreement at 1; *see also* Minute Entry, dated March 6, 2014. At the plea hearing, the Court carefully reviewed the consequences of entering a guilty plea and the constitutional rights that the defendant waived by pleading guilty, as also set forth in the plea agreement. Plea Hr'g Tr. at 23–31. Of particular relevance to the defendant's claims, the Court informed the defendant at the hearing that he was not waiving his right to claim ineffective assistance of counsel on collateral review. *Id.* at 38. During the hearing, the defendant discussed privately with his attorney various matters related to his plea. *Id.* at 26.

When questioned directly by the Court, the defendant affirmed that the facts laid out in the Statement of Offense were "correct," *id.* at 22–23, that he had not been coerced to enter the plea, *id.* at 39, 41, that he was "satisfied with the services of [his] lawyer in th[e] case," *id.* at 5–6, and that he had sufficient time to talk with his attorney about the case, the plea offer, and

"whether [he] should accept it," *id.* at 6, 33–35. Indeed, the defendant himself stated that "there [was]n't anything that [he] d[id]n't understand" about the plea agreement. *Id.* at 40. The Court accepted the defendant's guilty plea and the plea agreement, *id.* at 41, being satisfied that the defendant had voluntarily signed the plea agreement, and that he had "carefully read it" and "underst[oo]d its terms," *id.* at 29–31.

Two months after the plea hearing, the defendant's first attorney moved to withdraw as counsel, citing an unspecified conflict of interest brought to his attention by the defendant. Def.'s Att'y's Mot. Withdraw Counsel at 1, ECF No. 33. The motion was granted, and a second attorney was appointed as counsel. Notice of Appearance, ECF No. 37. The parties then informed the Court that the defendant was considering seeking withdrawal of his guilty plea. J. Status. Rep., dated June 18, 2014, ECF No. 39. The Court entered a scheduling order requiring the defendant to file any motion to withdraw the plea by August 18, 2014, *see* Minute Order, dated June 30, 2014, which filing deadline passed without the defendant submitting any motion. After several postponements of the scheduled sentencing date, the sentencing hearing was set for May 12, 2015. *See* Minute Order, dated May 1, 2015.

The day before the sentencing hearing, the defendant moved to withdraw his guilty plea. Def.'s Mot. Withdraw Guilty Plea ("Def.'s Mot. Withdraw Plea"), ECF No. 66. Due to the untimely filing of the motion, the sentencing proceeded as scheduled, but the defendant was advised by the Court that he would be permitted to pursue his motion after his sentencing. Sentencing Hr'g Tr., dated May 12, 2015 ("Sentencing Tr.") at 3–4, 116, ECF No. 75.

At the sentencing hearing, defense counsel raised a number of objections to the PSR, including in relevant part, objecting to "the calculation of the loss amount" for which the defendant would be held responsible. *Id.* at 4–44. The Court rejected the defense objections. *Id.*

4

at 44–48. After seven of the defendant's many victims testified as to the hardships they suffered due to the defendant's criminal activity, *id.* at 60–84; 110–11,[3] the defendant addressed the Court directly. He stated, in relevant part, that he initially "didn't want to sign" the plea agreement, and that this was "why [he] switched lawyers." *Id.* at 106. He denied an intent to hurt his clients, *id.* at 101–04, but admitted that his plan to mislead his victims in order to procure investments was "not a good plan, looking back," and that though he "really thought" that his actions would produce returns for his victims, he will "never be able to pay [them] back" and that "[he] can't blame anybody" but himself for his actions, *id.* at 105–07. The defendant was then sentenced to 156 months' imprisonment and an obligation to pay restitution totaling $28,609,438. *Id.* at 108–13. In explaining the reasons for the sentence, the Court noted that the defendant's "lying and thievery was ongoing" and that it was "shocking . . . how many elderly victims [the defendant] targeted and lied to." *Id.*

### C. THE DEFENDANT'S WITHDRAWAL OF HIS MOTION TO WITHDRAW HIS GUILTY PLEA

Six days after his sentencing, the defendant filed a motion to withdraw his motion to withdraw his plea in order to maintain his guilty plea. Def.'s Mot. Withdraw Mot. Withdraw Plea, ECF No. 69. The Court held a hearing on both of the defendant's pending motions to withdraw his plea and to withdraw that motion, in order to "make sure" that the defendant in fact wanted to maintain his guilty plea. Mot. Withdraw Guilty Plea Hr'g Tr., dated June 12, 2015 ("Mot. Withdraw Hr'g Tr.") at 2, ECF No. 86. At the hearing, the defendant stated, under oath, that he had discussed with his second counsel "what [he] really wanted to do," and that nobody, specifically including both of his court-appointed counsel, had "force[d] [him] or coerce[d] [him]

---

[3] The testifying victims included elderly retirees who lost their entire savings, parents of young children with special needs, an adult child struggling to care for his ailing parent, a religious organization, and a non-profit organization providing pediatric care.

5

into" entering or maintaining his guilty plea. *Id.* at 4, 7. The defendant confirmed that he had "fully discussed with [counsel] how withdrawing [his] motion" was "likely to make [his] conviction and [his] sentence final," and acknowledged that by withdrawing his motion and admitting under oath that he had not been coerced to do so, he was "giving up an ability or right to argue that [he was] coerced by [his counsel] into pleading guilty." *Id.* at 8–10. In his own words, the defendant stated that he had "accepted the sentence" imposed, that he "didn't want to put anybody through any more troubles, the victims or [his] family," and that he was "very satisfied" with the services of his second attorney. *Id.* Based on the defendant's representations at the hearing, the Court granted the defendant's motion to withdraw the motion to withdraw his plea, concluding that the defendant "knowingly and voluntarily signed" the plea agreement, and that he was "fully competent and capable of making a decision" to maintain his guilty plea. *Id.* at 12.

Almost one year after his sentencing, the defendant filed the pending § 2255 motion seeking to vacate his sentence and seeking discovery, as well as his motion to modify the protective order governing discovery. These motions are now ripe for review.[4]

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2255

Pursuant to 28 U.S.C. §2255(a), a prisoner in custody may file a motion to "vacate, set aside, or correct" a sentence that was "imposed in violation of the Constitution or laws of the

---

[4] Additional documents have been submitted in this case purportedly on behalf of the petitioner by a person named "Otis Paris," which documents were not accepted unless also signed by the defendant because "Otis Paris" is not a party to this suit or an attorney who has entered an appearance for the defendant. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *see also Muhammed v. U.S. Parole Comm'n*, Civ. No. 10 0177 (CKK), 2010 U.S. Dist. LEXIS 8742 (D.D.C. Jan. 24, 2010) ("A plaintiff in this court who wishes to proceed with counsel may do so only with counsel that is duly licensed and admitted to practice in this court.").

United States." 28 U.S.C. §2255(a). "[*A*]*fter* sentencing a plea may be set aside *only* on direct appeal or *via* a section 2255 motion." *United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995) (emphasis in original) (citing FED. R. CRIM. P. 32(d)); *see also* FED. R. CRIM. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."). If the court finds that there has been "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A judgment challenged on collateral attack carries with it a "presumption of regularity," even "when the question is waiver of constitutional rights." *Daniels v. United States*, 532 U.S. 374, 382 (2001). The burden of proof rests on the petitioner to establish a denial of constitutional rights by a preponderance of evidence. *Id.*; *United States v. Simpson,* 475 F.2d 934, 935 (D.C. Cir. 1973) (concluding that, in § 2255 action to set aside plea of guilty, "the preponderance of evidence supports the judgment rejecting petitioner's claim").

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment provides that "during plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162–65 (2012) (internal quotations omitted); *Missouri v. Frye*, 566 U.S. 133, 138-39 (2012). "It is well-established that the validity of a guilty plea depends on 'whether the plea represents a voluntary and intelligent choice,' and that 'the voluntariness of the plea depends on whether counsel's advice' satisfies the Sixth Amendment guarantee of effective assistance." *In re Sealed Case*, 488 F.3d 1011, 1015 (D.C. Cir. 2007) (citing *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)); *see also United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000) ("A plea of guilty is constitutionally

7

valid if and only if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (internal quotation marks omitted) (citing *Hill,* 474 U.S. at 56)); *In re Sealed Case*, 670 F.3d 1296, 1303 (D.C. Cir. 2011) ("A plea is not voluntary or intelligent, and therefore unconstitutional, if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence" required by the Sixth Amendment (internal quotation marks omitted) (citing *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990)). Indeed, a defendant who "ple[d] guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel' was not 'within the range of competence demanded of attorneys in criminal cases.'" *United States v. Rubio*, 677 F.3d 1257, 1261–62 (D.C. Cir. 2012) (quoting *Hill,* 474 U.S. at 56).

Under the two-factor *Strickland v. Washington*, 466 U.S. 668 (1984), analysis that applies to evaluate the merits of an ineffective assistance of counsel claim under the Sixth Amendment, the defendant must demonstrate: "that (1) his counsel's performance 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014) (quoting *Strickland*, 466 U.S. at 687–88, 694). Failure of either prong of the *Strickland* inquiry will preclude relief. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). The *Strickland* analysis applies to § 2255 proceedings. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005); *see also United States v. Streater*, 70 F.3d 1314, 1318 (D.C. Cir. 1995) ("*Strickland v. Washington* applies to a collateral attack on the voluntary and intelligent nature of a guilty plea

8

on Sixth Amendment grounds." (citation omitted) (citing *United States v. Horne,* 987 F.2d 833, 835 (D.C. Cir.), *cert. denied*, 510 U.S. 852 (1993))). Consistent with the burden on the defendant to establish the right to relief under § 2255, "[t]he burden to 'show that counsel's performance was deficient' rests squarely on the defendant." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 687).

With respect to the first *Strickland* factor, the defendant "must show that counsel's actions were not supported by a reasonable strategy . . . ." *Massaro v. United States*, 538 U.S. 500, 505 (2003); *United States v. Brisbane*, 729 F. Supp. 2d 99, 109 (D.D.C. 2010) (same). When engaging in this analysis, the Supreme Court has instructed that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 134 S. Ct. at 17 (quoting *Strickland* 466 U.S. at 690); *Payne*, 760 F.3d at 13 ("'[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); *see also United States v. Mendez-Cruz*, 329 F.3d 885, 891 (D.C. Cir. 2003) ("'Judicial scrutiny of counsel's performance must be highly deferential. . . . .'" (quoting *Strickland*, 466 U.S. at 689)).

With respect to the second *Strickland* factor, "[i]n the context of pleas a defendant must show" a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163 (citing *Frye*, 566 U.S. at 133). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir. 2013) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 134 S. Ct. 629 (2013). Demonstrating a reasonable probability in the context of a plea agreement requires a defendant to show "that there is a reasonable probability that, but for

counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 566 U.S. at 163 (alteration in original) (internal quotation marks omitted) (quoting *Hill*, 474 U.S. at 59).

### III. DISCUSSION

The defendant seeks to have his guilty plea and sentence set aside under 28 U.S.C. § 2255, asserting that his decision to enter and maintain a guilty plea, while represented by two consecutive court-appointed attorneys, "was not knowing and voluntary as a result of ineffective assistance of counsel." Def.'s Mem. Supp. 2255 Mot. ("Def.'s 2255 Mem.") at 14, ECF No. 79. He also requests leave to conduct discovery of "all of the materials" in the government's possession related to his criminal conviction, Def.'s 2255 Mot. at III, and to modify the consent protective order to permit him to do so, *see* Def.'s Mem. Supp. Disc. Mot. ("Def.'s Disc. Mem.") at II–VIII, ECF No. 76. As explained below, the defendant fails to demonstrate any instances of ineffective assistance of counsel, falling short of meeting the first *Strickland* factor, and his requests for leave to conduct discovery and to modify the protective order amount to no more than an attempt at an unguided fishing expedition into the government's files.

### A. THE DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE CLAIMS FAIL

The defendant argues that because his decision to enter and maintain a guilty plea "was the result of ineffective assistance of counsel and "was not knowing and voluntary," Def.'s 2255 Mem. at 11, his plea and sentence should be considered "not valid and void" and set aside, Def.'s Reply Supp. 2255 Mot. ("Def.'s 2255 Reply") at 13, ECF No. 90.[5] As support for his § 2255

---

[5] The defendant also argues that he should be "permitted . . . to withdraw his formerly entered plea of guilty," Def.'s 2255 Mem. at 7; *see also id*. at 3 ("(I) Whether the defendant should be permitted, prior to sentencing, to withdraw his formerly entered plea of guilty"), because he has demonstrated "a fair and just reason for requesting the withdrawal," Def's Mem. at 8 (citing Fed. R Crim. P. 11(d)(2)(B)). The "fair and just" standard for determining whether a defendant should be permitted to withdraw a guilty plea does not apply to collateral

10

motion, the defendant raises eight overlapping issues with associated arguments that are variously untethered to the issue posed or lacking in specifics to make them fully intelligible. Nevertheless, the Court addresses these issues in related groups based on discernible arguments, beginning with the defendant's claims of ineffective assistance of counsel related to his plea and then his claims related to sentencing and the hearing on his motion to withdraw his motion to withdraw his guilty plea.

1. **The Plea**

The defendant contends that his counsel was constitutionally deficient because he encouraged the defendant to enter into a plea agreement that impermissibly "limit[s] [his] ability to claim ineffective assistance of counsel," Def.'s 2255 Mem. at 12, *see also id*. at 2, 10–17, Def.'s 2255 Reply at 3. This assertion is flatly contradicted by the record and, consequently, without merit. The plea agreement waives the defendant's right to bring certain challenges to his conviction and sentence, but expressly does not waive the defendant's right to bring a § 2255 claim "based on newly discovered evidence or on a claim that [he] received ineffective assistance of counsel in entering into this Agreement." Plea Agreement ¶ 9(D) ("Waiver of

---

attacks on guilty pleas, however. At this stage, a defendant may only attack "'[a] guilty plea by showing that the advice he received from counsel' was not 'within the range of competence demanded of attorneys in criminal cases.'" *Rubio*, 677 F.3d at 1261–62 (quoting *Hill*, 474 U.S. at 56)); *see also Edwards v. United States*, 256 F.2d 707, 709–10 (D.C. Cir. 1958) ("A plea of guilty may not be withdrawn after sentence . . . except by proof that the plea was not voluntarily or understandingly made . . . ."). Consequently, the defendant's guilty plea may be set aside only upon a showing that his plea was not knowingly or intelligently made because he received ineffective assistance of counsel. To the extent the defendant means to argue that he was not given the opportunity to withdraw his guilty plea prior to sentencing, relegating this effort to a collateral filing, this claim is clearly false. He was given almost two months to consider withdrawal of his guilty plea immediately after his second counsel was appointed, Minute Order, dated June 30, 2014, and despite missing this deadline and requesting that the Court proceed to sentencing, J. Status Report, dated August 25, 2014 at 3, ECF No. 42, the sentencing judge permitted the defendant to pursue a motion to withdraw his plea filed only one day before his scheduled sentencing hearing, Sentencing Hr'g Tr. at 3. The defendant chose to withdraw this motion after his sentencing. Mot. Withdraw Hr'g Tr. at 7 (confirming that withdrawing the motion was "what [the defendant] really wanted to do," and that nobody, including both of his court-appointed counsel, had "force[d] [him] or coerce[d] [him] into" entering or maintaining his guilty plea). Given that the defendant was represented by his second counsel for a year, during which he was able to consider withdrawing his guilty plea, he had more than sufficient time and opportunity to withdraw his plea prior to sentencing.

11

Collateral Attack"). Thus, four of the defendant's issues related to the purported waiver of ineffective assistance of counsel claims fail, as they are predicated on a plainly incorrect reading of his plea agreement. *See* Def.'s 2255 Mem. 13–14; ("(IV) "Whether [his first counsel] is duty bound to object to portions of a plea agreement that limit 2255 claims and refuse to assent to such an agreement with such language in it?"); at 12–13 ("(III) "Whether [his first counsel] has a conflict of interest in agreeing to such a provision because it becomes a prospective limiting of liability?"); *id*. at 14–17 ("(V) whether [his first counsel] was required to bring a potential conflict of interest to the attention of the Court"); and *id*. at 17–18 ("(VI) "whether [his second counsel] was required to bring a potential conflict of interest to the attention of the Court").

The defendant also claims that counsel improperly entered into the protective order, "which impeded his actual innocence claim," *id.* at 7, or somehow precluded him from having an adequate "opportunity to . . . review the voluminous discovery before he entered a guilty plea," *id*. at 9. He further argues that the terms of the protective order somehow constituted "prosecutorial misconduct or destruction of evidence." *Id.* at 17. Specifically, apparently to bolster his actual innocence claim, the defendant argues that, "had [counsel] not stipulated to a protective order," the defendant "would have shown" that the entire loss amount for which he was held responsible was "$250,415.00." *Id*. at 7. The only evidence the defendant identifies as improperly withheld is testimony given by a government witness at a remedies hearing in a civil enforcement action brought against the defendant by the Securities and Exchange Commission ("SEC"), which hearing was attended by the defendant and held prior to his guilty plea. *Id.* at 5–7. The testimony at issue was given by the SEC's assistant chief accountant, who testified that "the calculated amount repaid to investors [by the defendant] was approximately 16.2 million" and "[t]he amount that was invested through that period was 38.6 million." *Id.* at 5 (quoting

from *SEC v. Taylor, et al.,* No. 11-cv-2054-RC, Remedies Hr'g Tr. ("SEC Remedies Hr'g Tr."), ECF No. 93). Far from being exculpatory, however, the government witness described the defendant's activity as "a consummate Ponzi scheme," SEC Remedies Hr'g Tr. at 45, stating that the defendant's victims invested roughly "$38.6 million" and he "repaid . . . approximately $16.2 million," *id.* at 45–46, resulting in a loss amount of approximately $22.2 million, not the $250,415.00 the defendant now claims. In any event, this evidence was hardly withheld from the defendant by the protective order since he attended the hearing where the testimony was presented and, since the testimony is on the public docket of the SEC civil action, was fully accessible to the defendant and his counsel.

The defendant's further claim that the protective order impeded his ability to "review the voluminous discovery" in his case, Def.'s 2255 Mem. at 9, is also incorrect. The protective order restricted the defense's ability to transmit to non-parties, to copy, and to retain after sentencing, any materials produced by the government, Consent Order Governing Disc. ¶¶ 1–6, and required that the defendant be provided access to "sensitive" materials containing his victims personal and financial information only in the presence of his attorney, *id.* ¶¶ 7–11. Thus, by its terms, the protective order did not block the defendant's access to that discovery, but merely regulated the manner of review for good and sound reason. His claims that the protective order prevented him from claiming actual innocence or from reviewing the discovery, or that the order amounted to prosecutorial misconduct or destruction of evidence are consequently unpersuasive.

The defendant also claims that because his attorneys provided ineffective assistance of counsel, he did not "understand[] the nature of the charges against him and the constitutional protections that he [was] waiving." Def.'s 2255 Mem. at 12. This argument, which is made in a seemingly-unrelated section, *id.* ("II. Whether counsel Cary Clennon's unwillingness to present

13

particular arguments at his request functions not only to abridge his right to counsel for trial, but also to limit the defendant's constitutional right of equal access to the sentencing process."), is contradicted by the defendant's own prior statements. The representations of a defendant at a plea hearing "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding and the defendant's declarations in open court carry a strong presumption of verity." *Farley*, 72 F.3d at 163. The defendant confirmed at the plea hearing that he had "carefully" read the plea agreement, "underst[oo]d its terms," and had "discussed it with [his] lawyer," Plea Hr'g Tr. at. at 30–31, which he also confirmed in the plea agreement itself, Plea Agreement at 13, and even later confirmed at the hearing on his motion to maintain his guilty plea, Mot. Withdraw Hr'g Tr. at 9–10. In his own words, "there [was]n't anything that [he] d[id]n't understand" about the plea agreement. Plea Hr'g Tr. at 40. Based on these repeated averments by the defendant, the sentencing judge concluded that the defendant was "fully competent and capable of making" the decision to plead guilty, that he understood "the nature and consequences" of the plea, that he was "acting voluntarily and of his own free will," and that there was "an adequate factual basis for [his] plea." *Id.* at 40–41. The defendant's own statements at the time of his plea about fully understanding the plea agreement and its consequences, as well as the findings of the sentencing judge, far outweigh the defendant's bare assertion now to the contrary.

The defendant's related claims that the Court "failed to inform [him] of the consequences of his plea pursuant to Rule 11(b)(1)(G)," Def.'s 2255 Mem. at 11, and failed to "address[him] personally in open court" prior to accepting his guilty plea, *id*. at 16 (quoting FED. R. CRIM. P. 11(b)(1)), are also demonstrably false. At his plea hearing, the Court walked the defendant through the facts to which he was pleading guilty, which the defendant agreed were "correct."

14

Plea Hr'g Tr. at 10–23. The Court likewise carefully reviewed with the defendant the rights the defendant was waiving under the plea agreement and by pleading guilty, *id.* at 23–31, and the penalties he faced, depending on how certain legal issues were resolved at sentencing, *id.* at 34–35. The defendant's claims that he did not understand the plea agreement are thus refuted by the record.

Finally, in an affidavit attached to his motion, the defendant cursorily alleges two instances of ineffective assistance of counsel, claiming, first, that his first counsel "strongly advised [him] to the point of coercion" to sign the plea agreement, Def.'s 2255 Mem. Ex. A (Affidavit of Garfield Taylor ("Taylor Aff.")) ¶ 15, ECF No. 79, and, second, that "[b]y failing to investigating" his case, his first attorney "caused plus recommended that the plea agreement should be taken," *id.*¶ 26. These bare assertions fall far short of the requisite showing for the first *Strickland* factor. Even assuming the defendant's first counsel recommended strongly that the defendant accept the plea agreement, the defendant was appointed new counsel for the very purpose of helping him decide whether to withdraw his guilty plea, a decision he was able to consider for a year. His claim of coercion by his first attorney is consequently irrelevant.

His claim that his attorney "fail[ed] to investigate" his case also fails. To support such a claim, a defendant must do more than simply assert a failure to investigate, and must make a "'comprehensive showing as to what the investigation would have produced' and how this information 'would have produced a different result.'" *United States v. Bertram*, 209 F. Supp. 3d 243, 256 (D.D.C. 2016) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)). The defendant offers no explanation as to the evidence he believes would have been uncovered by further investigation and fails to explain how that evidence would affect the plea

15

process. His claim of ineffective assistance of counsel during his plea is consequently insufficient as a matter of law.

### 2. The Sentencing and Post-Sentencing Hearing

The defendant claims that counsel failed to "present particular arguments at his request" at sentencing, Def.'s 2255 Mem. at 10, including that counsel "fail[ed] to press the loss amount" for which he would be held liable, *id.* at 18–21. This assertion is contradicted by the record. At sentencing, counsel extensively disputed the loss amount attributed to the defendant, Sentencing Tr. at 4–14, 19–21, as well as a number of other issues, including whether the defendant's conduct constituted a Ponzi scheme, *id.* at 14–15, 17–19, whether certain individuals were properly classified as victims, *id.* at 21–22, and whether the defendant was properly characterized as an "investment advisor," *id.* at 31–33. The defendant, who elsewhere in his brief cites to the very argument made by his counsel that he claims did not occur, Def.'s 2255 Mem. at 19 (quoting Sentencing Tr. at 5), criticizes one aspect of the loss amount calculation. Specifically, the defendant believes that the loss amount should have been reduced "by the total amount of money returned to the investor victims, . . . approximately 16.2 million . . . identified at 11-cv-02054-RC," the aforementioned SEC civil enforcement action against the defendant. Def.'s 2255 Mem. at 21–22. As already noted, however, the cited testimony by the government witness does not support the defendant's claim that the loss amount was improperly calculated and, therefore, failure to raise the issue does not constitute deficient performance and the defendant's argument fails. *Id.* at 10–12 ("(II) Whether counsel['s] unwillingness to present particular arguments at his request functions not only to abridge his right to counsel for trial, but also to limit the defendant's constitutional right of equal access to the sentencing process?"); *id.* at 18–22 ("(VII) The failure of his counsel to press the loss amount that should be reduced by the

amount of money that were returned to the investors, Defendant asserts that he received ineffective assistance by [his second counsel.]").[6]

The defendant also claims that he "receive[d] ineffective assistance of counsel from [his second attorney] with regard to the motion to withdraw the plea." *Id.* at 22–23. The defendant does not precisely identify what he believes constituted ineffective assistance of counsel at the hearing, but simply asserts that "absent the ineffective assistance, his offense level would be 16 to 19 levels lower, yielding a Guidelines Sentencing range of 18 to 24 months." *Id.* at 23; *id.* at 22 ("(VIII) Whether Defendant Pro se, filed the present petition, claiming that he had received ineffective assistance from counsel Cary Clennon with regard to the motion to withdraw the plea?"). At the same time, the defendant alleges in his affidavit that his second counsel coerced him to maintain his plea by telling him that "the Judge would likely give" him a much longer sentence if he were to be convicted at trial. Taylor Aff. ¶ 29. The defendant does not contest the accuracy of his counsel's advice, *id.*, and correctly informing a defendant that he may face a greater sentence after conviction at trial is not coercion, and in fact, failure to do so may qualify as ineffective assistance of counsel. *See United States v. Hanson*, 339 F.3d 983, 990 (D.C. Cir. 2003) (counsel is deficient if counsel "makes a plainly incorrect estimate of the likely sentence due to ignorance of applicable law of which he should have been aware"). Thus, the defendant fails to show any constitutionally deficient performance on the part of his counsel post-sentencing.

---

[6] The difference between the $22.2 million loss amount identified at the SEC remedies hearing, SEC Remedies Hr'g Tr. at 45–46, and the "$28,709,438" figure urged by the government and ultimately adopted by the Court at sentencing, *id.* at 39, 113, is immaterial to the determination of the defendant's total offense level under the Guidelines. Under the relevant sentencing guideline, a 22-level increase applied for any "loss between $20 and $50 million." Sentencing Tr. at 92–93; *see also* U.S.S.G. § 2B1.1 (2014). Consequently, even if the applicable loss amount were $22.2 million, the same sentencing enhancement would apply.

## B. THE DEFENDANT'S REQUEST FOR DISCOVERY IS WITHOUT MERIT

The defendant seeks disclosure of "all of the materials" in the government's possession related to his case, including "grand jury transcripts," materials already received from the government prior to his guilty plea, and documents that *he* produced to the government before he pled guilty. *See* Def.'s Mem. Supp. Disc. Mot. ("Def.'s Disc. Mem.") at II–VIII, ECF No. 76; Def.'s 2255 Mot. at vii–xiv. He admits that he is seeking this discovery only "to see if" the Government introduced "false evidence" that he had committed a crime, Def.'s Reply Supp. Mot. Disc. at G, ECF No. 90-1, and acknowledges that because he is not seeking any specific discovery, he "may not find any evidence" that would entitle him to relief, Def.'s Disc. Mem. at III. Despite this acknowledgement, the defendant believes that discovery should be granted "in an abundance of caution." *Id.* This request fails for two reasons.

First, though a district court may, in its discretion, grant a § 2255 petitioner discovery upon a showing of "good cause," *District Att'ys Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009) (quoting FED. R. GOVERNING § 2255 PROCEEDINGS 6), a desire to engage in little more than an unbounded fishing expedition "in an abundance of caution" does not constitute such a showing, *see Strickler v. Greene*, 527 U.S. 263, 286 (1999) ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."). The defendant admits that his discovery request is only "to see" if there is any evidence that could support a claim for collateral relief. The Court declines to grant the defendant leave to conduct such broad and unjustified discovery.

Second, even if the defendant had shown "good cause," the government raises the defendant's enforceable waiver in the plea agreement of his "right to any further discovery or disclosures of information not already provided at the time of the entry of [his] guilty plea." Gov't's Opp'n Def.'s 2255 Mot. at 1, 15–16 (citing Plea Agreement ¶ 9(B)), ECF No. 89. The

defendant has failed to demonstrate any reason to set aside the plea agreement, *see supra* Part III.A.1, and cannot now rescind this waiver of any right to further discovery made pursuant to the enforceable plea agreement.[7]

## IV. CONCLUSION

For the foregoing reasons, the defendant's § 2255 Motion is **DENIED** and his motions for Leave to Amend the Protective Order and other discovery-related motions are **DENIED**. An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date: June 7, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[7] The defendant has filed four additional discovery-related motions seeking to compel discovery, Def.'s First Mot. Compel, ECF No. 87; Def.'s Second Mot. Compel, ECF No. 91, to sanction the government's failure to produce responses to his requests, Def.'s Sanction Mot., ECF No. 92, and for a hearing on his motions, Def.'s Mot. Hearing, ECF No. 99. These four motions are denied as moot, because the defendant is not entitled to discovery since "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).